Thank you. Good morning everyone. We will call the first case. In this case we have Mr. Simon representing Klaas who is doing this by video from the courthouse in Pittsburgh, correct? Yes, your honor. You can hear us okay, Mr. Simon? I can, your honor. Thank you. Okay, with that we will call Mr. Robleto. Good morning, your honors. Aurelius Robleto on behalf of the creditor and appellant here, Elizabeth Shovlin. With the court's permission I would like to preserve three minutes of my allotted time for rebuttal. That request will be granted. Your honors, these appeals arise from two related matters in the bankruptcy case of the Klaases. The first was the bankruptcy case's order denying the creditor's motion to dismiss the bankruptcy case. And the second was its order granting summary judgment in favor of the defendants in the creditor's action against the debtors seeking a determination. And I should have mentioned that we did consolidate both of these cases for argument in order last week, so we understand where we are procedurally. When you address this as a threshold matter, of course it's our law that neither consolidation with a jurisdictionally proper case nor an agreement by the parties can cure the jurisdictional defect. So as, if you could just briefly address as to the first case, 15-3341, what is your position as to jurisdiction? And specifically, given that we've held that denials of motions to dismiss are final orders in the context of Chapter 7 and Chapter 11, is there anything about Chapter 13 such that a denial of motion to dismiss in this context is any less final? No, Your Honor, I believe not. And I understand that the Court has requested that we come prepared to discuss the finality of these particular kinds of orders. I expect that that's because of the recent decision of the Supreme Court in the Bullard case. And I think that that is a different case. That case dealt specifically with the refusal to grant confirmation orders, which is very different. And if we look at the reasoning of Inouye Brown and Inouye Christian, we see that refusal to grant dismissal is very characteristically different. If a debtor is denied an opportunity to confirm... How is it different? How does that refusal to grant dismissal in a Chapter 13 case denote any degree of finality? For the same reasons it denotes finality in the context of a Chapter 7 and a Chapter 11 case. But doesn't our jurisdiction... Haven't we said that we only have appellate jurisdiction from a final order from the District Court? And the District Court affirmed the refusal to dismiss, the motion to dismiss initially. How does that become final? It's final for the same reasons as the orders were final in Inouye Brown and Inouye Christian. And that is because bankruptcy is different. This Court has said it a number of times, as has the United States Supreme Court. Because of the nature of bankruptcy, it contains many discrete controversies and issues that can be separately resolved. And because of the life of a bankruptcy case, finality must be viewed differently. Let's go back to Bullard, because part of the Supreme Court's reasoning there was that there remained rights and obligations of the parties that needed to be addressed and that the possibility of discharge lived on. Why isn't that just as true here? In fact, that's what is happening with the second case that we've consolidated with the first. Well, the second case really shouldn't have existed and wouldn't have if things had proceeded as the creditor believes they ought to have. In other words, when she filed her motion to dismiss and that motion to dismiss was denied, it really did put an end to matters and what would happen because we were at the end of the life cycle of the case. If there was an end to the matters, why did matters continue to proceed in bankruptcy court with a summary judgment ruling? Well, Your Honor, because had the ruling came down in favor of the creditor, then the case would have been dismissed without the debtors having received a discharge. Instead, the opposite happened and the case would mechanically move forward, as these cases do, toward a discharge. And for the reasons that we state in our papers, that's inappropriate. The plain language of 1328A provides that a debtor may not receive a discharge when that debtor has not complied with the plan to the letter. The words in 1328A are that a discharge is appropriate only upon completion of all payments under a plan. Those are merits arguments that could be raised at the conclusion of the case in a single appeal from the summary judgment order. How does that go to making the denial of the motion to dismiss a final order? Well, Judge, I lean back upon the language contained in the case of In re Brown, which remains the law of the circuit and has not been reversed in any way. Unless called into question by Bullard. And I believe that it isn't. I believe that the two cases comport with one another. The issue in Bullard is characteristically different because a debtor in a case under Chapter 13 who fails to get one plan confirmed can simply go back the next day and file another plan and cure whatever defects the court saw in the prior plan. Not the case as here. If our motion to dismiss is denied, we cannot simply file the same motion to dismiss asserting the same grounds on the very next day. I want to return to your merits argument. You clearly argue in your brief that I review here for the decisions of the bankruptcy court and of the district court is abuse of discretion. How did the court abuse its discretion in not granting your motion to dismiss and on the other hand granting the ultimate discharge just because there was a late payment? Whatever the default was, even if there was a default, was cured in a relatively short period of time? Your Honor, I will say that the standard is abuse of discretion as to the question of whether dismissal is appropriate. It is not abuse of discretion on the question of whether summary check was appropriate in the discharge action. The debtors were not entitled to a discharge as a matter of law. That isn't discretion. Now on the question of dismissal, it's an abuse of discretion because the decision not to dismiss the bankruptcy case was based upon the error of law that the debtors... What's the error of law? That the debtors were entitled to a discharge under 1328A. It specifically says that the non-dismissal order is grounded in that wrong point of law. Now if it were not, if it were the case that the judge said we need time to determine whether the debtors are entitled to a hardship discharge or I'm going to give the debtors an opportunity to convert their case... But doesn't 1307 say may? It does say may, and that is where the discretion comes in. But if the court bases its decision on an incorrect conclusion of law, then it abuses its discretion. Why is it an incorrect conclusion of law? It may be slightly delayed, but why isn't it still a payment under the PAM that completes the payment as scheduled? Because 1328A is a mechanical statute. The judge has no discretion. When the payments are made under the plan, the debtors are entitled to a discharge. There is no time for the creditors to step forward, no question of whether the trustee may think it's appropriate, no discretion on the part of the judge. When it happens that the debtors complete the payments under the plan, then they are entitled to a discharge. But a delayed midstream, in other words, if within the period there is an interim payment that's slightly delayed, you would agree that with payments continuing to complete the gross amount due by the end of the period, that that would be completion of payments under the plan, right? So long as the final payment is made before it is due. Why is there a different standard? Why isn't this, as the district court aptly suggested perhaps, a perfection standard that you're imposing on that last payment that's not imposed anywhere along the interim payments? Because of the language of 1328A. Very express, very clear. It says all payments under the plan. And the other parties to this case would like to have the court accept that the standard in 1322, limiting the duration for plan payments of 60 months, exists at plan confirmation and nowhere else. But that's illogical when spoken, and they need to make that illogical claim in order to arrive at the conclusion that despite the language of 1328A, allowing for no discretion. So every time there's a plan, there's a late payment, any creditor is entitled to ask that the case be dismissed and that the discharge be denied. Is that what you're saying? No, Your Honor, I am not. What's the test? What I am saying is that under 1328A, in order to be eligible for a discharge, the debtors must complete all payments under the plan. If they have not made the payments within the term of the plan, then they have not completed payments under the plan. I asked the question, any late payment? Any late payment is going to deny, going to entitle a subsequent creditor in other cases to come in and say, bankruptcy court, deny these debtors a discharge. No, the rest of the code actually gives the court and the debtors some room. What's the room? 1329, for instance, allows for modification of a plan. So if this were a 36-month plan and the debtors could no longer complete that plan within 36 months, 1329 says, you can modify your plan. And moreover, if there are problems and the debtor is not able to complete the plan within that 16-month period, 1328B says, here's how the court is to exercise its jurisdiction. Congress has determined a safety valve here and it's not for any court to create a separate mechanism to allow relief for debtors who unfortunately fall behind, however small. 1328A is quite clear. It says when a debtor may be entitled to a discharge. I see my time is up. Thank you. I'll be back in a moment. Okay, Mr. Simon. May it please the court, I'm Philip Simon and I represent the appellate Paul and Beth Ann Klaus. I've been allotted seven minutes. I'd like to thank the court first for allowing me to appear by video conference. The court has asked counsel to address whether the order denying the motion to dismiss was a final order for the purposes of appeal. It is based on established precedent in this court, but more importantly, this particular denial of the motion to dismiss functionally ended the Chapter 13 case. The bankruptcy courts, June 4th, 2000... How did it end a bankruptcy case, functionally end the case when the bankruptcy court denied the motion to dismiss? Because it found that the plan base was complete. It also found to deprive the debtors of a discharge under these circumstances would be contrary to the bankruptcy code. At the time of the order, all planned payments had been made. All planned payments had been distributed to creditors. The debtors' entitlement to a discharge under 1328 had been established basically because all planned payments had been made. Everything that... The only thing left to do was ministerial. The trustee had to file a final report and the court had to issue a discharge order, which by practice it does when there is a final account. Under 1328 states as soon as practicable after completion of all payments under the plan, the court shall grant a discharge. So my position is that in this particular case, it was a final order. You have the quirky situation of before that order, the creditor filing an objection to discharge proceeding, which was filed in April and a month and a half later, the bankruptcy court coming down with a decision that basically mooted that objection to discharge. What about if halfway through the five-year period, Ms. Chauvelin had come forward and said, based on the payments that are being made, there's no way that this plan could be paid in 60 months and therefore we're going to move to dismiss. We're moving to dismiss the Chapter 13 bankruptcy and the court at that time looked at it and said, you might be right, but that's just really an accounting mistake. Would that dismissal be final? I don't know that it would. Obviously, if the case is dismissed, it's a final order, but the denial of it... The denial. Would that denial of the motion be final? I don't think it would. Okay. My point of view is in this particular case, it functionally ended the case. You're suggesting then a standard to decide whether it's final and whether there's appellate jurisdiction, the court has to conduct, say, a preliminary assessment of what other issues might need to be resolved and what claims could be raised in motions for summary judgment or objections to discharge and whether those are substantive or ministerial. That doesn't seem like a workable way to approach a question of finality or appellate jurisdiction. Well, I think if the issue is raised, you have to look at, does it functionally end the case or does it functionally end the dispute that in effect robs an appellant effectively of appellate relief? This case certainly falls in the former that there was nothing left to do other than pretty ministerial, file a final report and enter a discharge order when the entitlement had already been established in the opinion of the bankruptcy court. All right, Mr. Somme, you don't have a whole lot of time here and you may not have a monitor there, so let me just ask you on the merits here. What's your position? Yes. The code has a very simple contract scheme. Section 1322 says what the contract terms can and cannot be in this case you cannot have a payment period that goes over 60 months. 1327 makes that contractor plan binding on everybody, but 1307 defines what to do if there is a contract breach, a plan default. 1307 gives the bankruptcy court discretion to dismiss, convert, or not. Let's look at that plain language because it does use the term may, but when you look at the broader context, the language is the court may convert a case under Chapter 13 to a case under Chapter 7 or may dismiss a case under Chapter 13, whichever is in the best interest of creditors and the estate. That language, giving those two options as may and then saying whichever is in the best interest of the creditors and the estate would seem to provide two exclusive options. Why doesn't the plain language of the statute foreclose late payments? Respectfully, I believe that the term may indicates and may not, and in effect, the court is asked to decide what is the consequence of a plan breach. We will admit that if you don't complete in 60 months, you are in breach, but there are $1 breaches and there are $50,000 breaches, and one established principle of contract law is you compensate creditors or parties as if the contract had been performed, and in this case... This isn't common law contract. We're dealing with statutory rights that are set by Congress and we start with the plain language of the statute. Why doesn't this plain language provide two exclusive options? One or the other, whichever is in the best interest of the creditors and the estate, but those are the two options that are provided. Those are the two options mentioned, but by saying may, I think it leaves open other alternatives. Why isn't this an informal plan modification? That is, you're asking for post hoc forgiveness for a late payment when the statute would not permit the anticipatory breach. You wouldn't get permission ahead of time. You're asking for permission after the fact. Why isn't that an impermissible modification? Well, modification is basically a request for confirmation of an amended plan. No amended plan was put forward by anyone and it was extremely late in the proceeding. The facts of this case are very unusual. The motion to dismiss by the trustee was filed on the absolute last day of the 60-month statutory period. Technically, the debtors could not get a cashier's check, get it to Memphis, and clear the default. They didn't even know there was a default until the last day. So the better option at that point is to allow them to quickly cure a small plan default. Yes, it is, but that's the natural compensation for this particular contract breach. Are you suggesting there's a special rule where debtors are acting in good faith or didn't know in advance that their payments would be delayed or are you arguing more generally as to what's permissible under the statute? Well, I would say I'm limiting it to the facts of this case which are extremely unusual. I mean, the debtors can only pay what they know is due and they believe they did up until the very last day of the 60-month period. And then when they could have said, well, wait a minute, we paid all our plan payments. They didn't. The amount was small. I view it more as a settlement payment because rather than saying, look, the confirmation orders established plan funding and we paid that, you know, okay, if for some reason the plan base increased, we'll just pay it. Okay, Mr. Simon, we thank you and at this point we're going to call on Mr. Katz as your time is up. Thank you. Thank you. Mr. Katz. Mr. Katz, the Chapter 13 trustee was initially on the Chauvin side and you changed the positions here. That is correct, Your Honor. The motion to dismiss, I'm sorry, may it please the Court, my name is Owen Katz. Thank you. I represent Rhonda Winnicore, Chapter 13 trustee for the Western District of Pennsylvania. It's a general practice in the Western District of Pennsylvania. It has been since Ms. Winnicore was a Chapter 13 trustee to do an audit of the case at the end of the plan term to determine or to confirm that in fact all payments have been made. She needs to do that before she can recommend basically court approval of her final report and audit. Whenever she discovers that in fact there's an arrears, a shortfall in the plan funding, the way she brings it to everybody's attention is by filing a motion to dismiss. That gets it on the Court's docket. It alerts all creditors in the case. It alerts the debtor to the fact that there's this shortfall. All parties have the chance to appear in court and respond. But again, whenever she files the motion, her intent is to put everybody on notice. Her goal is for a plan to complete. So in the motion, there's language that says if the payment is made, I'm going to withdraw the motion to dismiss. And that's in fact what occurs. What's the statutory authorization for that general practice? Well, it's trustee belief and position. Again, this has been a practice in the court since forever that there is the ability to cure a plan funding shortfall at the end of the plan, which is different than a modification of the plan. And this kind of leads me into the Section 1328 issue and the distinction that we believe exists between a cure by prompt payment and a modification of the plan. We believe that the payment of $1,123 that's at the heart of this case was not a modification of the debtor's plan, but rather it was a cure of a plan funding shortfall by prompt payment. Could not one view that payment as one that was made under the plan, $1,123? It was made... Well, you know, I guess my concern here is I don't want to kind of concede the appellant's argument by saying it was made under the plan. It was a payment that was due under the plan. All right. Okay. And frankly, I mean, I will ask the court to consider the dictum in the Seventh Circuit decision in powers where the court basically said this is not a violation of the statute that says that there's a five-year limit on the plan. What it is is it's basically the cure of a payment that should have been made but wasn't made. So, again, it's a cure. It's not changing in any form the character of the Chapter 13 plan. Some general reading definitions. A cure means to remedy, restore, remove, or to rectify. That was the Seventh Circuit in the matter of Clark. Another common way of talking about a cure is taking care of the event triggering the default and returning to pre-default conditions. That was in Ray Taddeo in the Second Circuit. If you miss your mortgage payment in October, you are in default of a mortgage. If you make a double payment in November, you've cured that default and you return the mortgage to its pre-default conditions. Why don't you want to concede that it's a payment under the plan? Functionally, it seems to get you to the same place if it's under the plan and the bankruptcy court has equitable discretion to treat it as falling under the plan, effectively a cure. Are there other consequences to saying it is under the plan that concern the trustee? Well, honestly, no, I don't think so. The fact is it is a payment that's required by the plan. It's a payment, I suppose, under the plan to the extent that it was part of the calculation in determining what constitutes completion of all payments under the plan. So I think in that sense, it was a payment under the plan. As far as the distinction between cure and modification, the distinction doesn't change just because the cure comes at the end of the legal obligation. You have a five-year court order. You make 59 monthly payments on time. You miss the last payment. You make up that payment the month after, in month 61. You have until the end of the month changed the form or character of the automobile loan. All you've done is you've cured the default by a prompt payment. One dictionary defines modify as changing in form or character. To modify a plan means to change its form or character. In the case of a default, because you missed the planned payment. I'm sorry, do we actually need to reach the question here of whether or not it's a payment under the plan since, as I understand it from the briefing and argument, the shortfall here relates to the plan base, relates to fees of the trustee. Should we think of that as something different than the actual payments under the plan? Well, I think from the trustee's perspective, there are basically two things that the trustee is looking at in order to determine whether or not all payments have been made. One is the payments provided for in the plan, and that's the plan base. So it's a simple mathematical calculation. If you multiply what the monthly payments are by whatever the term of the plan is, you get your plan base. There's a different number, though, and that is basically the amount that's necessary to comply with all the planning goals. And where you get into some difficulties in some of these cases is that over this period of five years, basically things happen. Things change. Trustees' fees change, as Judge Stegonia noted or identified as one of the reasons for the shortfall in this case. There's mortgage payment changes that occur. There's other administrative expenses that come into play, such as attorney's fees. There's a missed payment that's made up. But what happens is if you're paying secured debt, there's interest accruing on that secured debt. The accrual of that interest basically throws off the plan funding. So all of these things are coming into play over the period of five years. So you may get to the end of the five-year period, and in fact all payments have been made based on calculations, but some additional monies are necessary in order to... Why isn't it better to handle this matter under 1328B? 1328B has two problems with it. Number one is the discharge isn't as broad as the discharge under 1328A. So that's one reason. The other reason is that 1328B requires the debtor to basically initiate another contested proceeding. There's three elements that need to be established under 1328B. So basically the debtor has to file a motion asking for a hardship discharge and then go through the process of proving that it shouldn't be held or he or she shouldn't be held responsible for the default. And that could be a significant one. So again, after having been given the opportunity to do the cure, which again we suggest to the court is different than a modification because it's not changing in any form or character the nature of the plan, the debtor should be permitted to get the discharge that results from having made all payments. And I see that my time is up. The one question I would have, the final question, the bankruptcy court acknowledged as the Chapter 13 trustee did in her motion that there was a default, but found that this was not a material default. Right. Is that an appropriate determination by the bankruptcy court? That it was a material default? Right, that it was not a material default. Well, frankly, Your Honor, we're talking about $1,123 over a five-year plan in which the debtor's paid $174,000. I don't know the material default is defined in the code. I don't believe that it is, but I'm not sure that anybody looking at this reasonably would consider this to be a material default. Can I just clarify, you had answered earlier explaining the differences between the technically what are payments under the plan and what you were describing and categorizing as administrative types of expenses over the five-year period. In this case, is it correct that all of the payments under the plan technically were made and the shortfall relates to those administrative expenses? The bankruptcy court identified about $700 plus or minus of trustee fees as being a factor. There's probably another $300 or $400 that I don't think was ever identified, what the source or basis of that is. So nobody's actually gone back and figured out where that came from, but I think on a calculation basis, I think the record pretty much indicates that the debtor's paid in the amount that was calculated based on the amount of the monthly plan payments times 60 before they got to the end of the plan term. Thank you. I mean, I guess let me go back here a second, because Judge Van Aske asked if the procedure that is followed is in the code and you acknowledge that it's not per se in the code, but it's Western District practice. Following the motion to dismiss, as Chapter 13 trustee does in cases like this, I mean, has the real potential, and this is the case, to precipitate this kind of a battle where a creditor then joins and fights an issue that may not be clear in the code. Wouldn't there be a better administrative procedure to follow short of following a specific motion to dismiss that would not lead to questions like this being brought before the courts? Hindsight is 20-20. I'm just wondering. No, no. I'm not saying hindsight. I'm just wondering if you've thought of this. Well, I don't think that we have, and again, that's because this has been the practice all along, and we think we're right on this, and we think that, in fact, there is no violation of the Bankruptcy Code by allowing the cure. If that hadn't been said, yes. There are certain other ways that the trustee could proceed. I mean, one thing the trustee could do is perhaps file a motion for a status conference, bringing everybody in and pointing out the fact that there's a default. One thing that the motion to dismiss does do, again, is it tees it up. And if, in fact, the debtor has an option here. The debtor doesn't have to cure if they don't want to. They can convert the case to Chapter 7. They can let the case get dismissed. They can ask for a hardship discharge. I mean, I guess the problem is with filing a motion to dismiss, you invite this contest. Well, we invite the contest, but, frankly, Your Honor, if we're wrong on this issue, then even if we file a motion for a status conference, everybody can come in and say, No, you can't allow the cure. You have to dismiss the case. So I don't know any way we can tee this up so as to completely avoid the issue. So you're going to tee it up and not do it? As simple as, say, a final bill. You know, your final bill is in order to get your discharge. And somebody looked at this and said, Wait a minute. We thought we were all paid. Well, and that's what happens sometimes. I mean, sometimes people come in here and they dispute the trustee's calculation, and there is the need to kind of reconcile the accountants. It's not perfect. I mean, whenever we do a calc at the beginning of the case in order to figure out what needs to be paid into the plan, I mean, it's being done by an individual who's basically on a calculator trying to put in the numbers and come up with the exact amount that's going to be needed. Errors happen. I mean, that's another source of the reason why we sometimes get to the end of a 60-month plan to find out, you know, just not enough has been paid in. Okay. I understand. Thank you, Mr. Katz. Thank you. Mr. Robledo. Thank you again, Your Honors. I know I'm asking this Court to administer strong medicine, but it is strong medicine required under the plain language of the Code, and I can't emphasize that enough. I want to address a couple of the questions and concerns that the Court has identified along the way. First, Judge Fischer has asked, I think, all of the parties now, about whether any late payment of the plan occurring any time during the plan of any delay can precipitate the same argument that I'm here making today, and I think the answer to that is no, and the reason for that is that 1328A turns on the language of the plan, the payment terms of the plan. This particular plan does not require, does not say that the plan itself is dishonored or is defaulted by the making of a payment a month late. What it does say very clearly and in line with the rest of the Bankruptcy Code, including Section 1328, is that it can never extend beyond the payment term of five years. And so for that reason, I think there's a distinction there. So given all the discussion we've had, let's assume there's at least ambiguity as to whether that applies to the confirmation of the plan versus the ability to cure. Don't we need to also interpret a statute? I mean, one of our canons is we try to do it consistent with legislative intent and we try to avoid absurd results. You were highlighting logic as one of the things we should be striving for here. Don't we end up with an absurd result if we are effectively encouraging debtors not to complete plans and to declare a hardship discharge rather than making what, in this case, for example, is relatively de minimis late payment that would complete a plan and allow for the discharge for the debtor and the payment that was agreed upon through the plan for the parties? No, Your Honor. In fact, I've given a great deal of consideration to what happens when this Court does what it must and honors Section 1328A. The intent of the Code is fairly clear. At all corners, Congress intended for these plans to be strictly limited to five years. 1328A says honor the payment terms of the plan, and it's saying that those payment terms have to be limited to five years. You mentioned a question about whether the plan base, with you in the plan, Judge Krauss, you mentioned that whether that plan base could be considered all the payments due under the plan. But our plan here is quite clear on payment terms, and 1328A makes us go back to the plan to determine whether the debtors have completed all payments under the plan. 1328A strictly says the plan is the yardstick. And here, the monthly payment is an estimate. It says that in black and white in the plan. It says the burden for effectuating the goals of the plan with regard to payment lies solely with the debtor. And so if there are changes, if a mortgage payment increases, if there are any changes at all, then it is the debtor who has to bear the burden of that. Your Honors, the injustice that the courts below believe justifies attenuating Section 1328A well beyond its plain meaning is squarely addressed in 1328B. Congress created a solution. The courts do not have to and should not. Thank you, Your Honors. All right. We thank all counsel for their arguments in this case. And we'll take the matter of these cases, I should say, since we have two of them now. And we'll take the matters under advisement.